McCLOSKEY, Respondent, v. THE PULITZER PUB-
LISHING COMPANY, Appellant.

St. Louis Court of Appeals, May 17, 1904.

1. **EVIDENCE: Libel: Opinion.** In an action for damages against
the publisher of a newspaper for publishing an article to the
effect that the plaintiff did not provide for his family, where the
defendant pleaded the truth of the publication, the opinion of
a witness who sold clothing to plaintiff and his family, that the
purchases of plaintiff for clothing were "liberal," was incom-
petent.

2. ——: ——: —— **Harmless Error.** The evidence is ex-
amined and held a claim that the error was harmless because
the clothing was furnished only to a portion of the family for
whom it was conceded plaintiff provided for sufficiently, was
not well taken.

Appeal from St. Louis City Circuit Court.—*Hon. J. A.
Tally*, Judge.

REVERSED AND REMANDED.

*Judson & Green* for appellant.

The court erred in permitting witness Bayless to
state over appellant's objection his opinion or conclu-
sion as to whether or not respondent's expenditures
for his boys were "liberal," and in permitting respond-
ent to state his conclusion that the provision he made
for his family was "a plenty for them." Fry v. Estes,
52 Mo. App. 1; Wharton on Evidence, sec. 509; Fergu-
son v. Davidson, 147 Mo. 664; Levin v. Railway, 140
Mo. 624; Davidson v. Knights of Pythias, 22 Mo. App.
263. When the evidence is conflicting and illegal evi-
dence is admitted the judgment will be reversed. Weil
v. Posten, 77 Mo. 284; State v. McConnor, 51 Mo. 160;
Johnson v. Dicken, 25 Mo. 580.

*Charles & Lackey* and *J. M. Holmes* for respondent.

The rule in this State is well settled, by statute and decision alike, that the judgment of the court below can not be reversed for a merely technical error, when the verdict is for the right party, and when the error complained of did not materially affect the merits of the action. R. S. 1899, sec. 865; Newcomb v. Blakely, 1 Mo. App. 289; McKeon v. Railroad, 43 Mo. 405; Porter v. Harrison, 52 Mo. 524; State v. Hopper, 71 Mo. 425; Blewett v. Railroad, 72 Mo. 583; Noble v. Blount, 77 Mo. 235; State ex rel. v. Edwards, 78 Mo. 473; Morris v. Railroad, 97 Mo. 367; Fell v. Rich Hill Co., 23 Mo. App. 225; Brown v. Railway, 20 Mo. App. 427; Stroab v. Hayward, 37 Mo. App. 585; Compton v. Johnson, 19 Mo. App. 93; Alexander v. Railroad, 19 Mo. App. 312; Beiler v. Devoll, 40 Mo. App. 251; Orth v. Dorschlein, 32 Mo. 366; Strauss v. Railroad, 86 Mo. 421.

GOODE, J.—Action for damages for libel. The appellant corporation publishes a newspaper in the city of St. Louis, known as the St. Louis Post-Dispatch. An article was published in that paper in 1896, the general tenor of which was that McCloskey did not provide for his family, furnish them enough to eat or wear, and that his wife and children went ragged. It is unnecessary to reproduce the article in full in the view we take of this appeal.

The appellant pleaded the truth of the publication in defense of the action and the belief, based on good grounds, that it was true, to prove lack of malice and mitigate the damages.

The jury found it to be libelous; and it may be said very strong testimony was adduced by McCloskey to clear himself and to show that he provided well for his family. But the evidence was not all one way; for his

wife and children and a domestic servant, testified that he furnished insufficient food and clothing. The very gist of the case was whether McCloskey made suitable provision for them.

The following testimony of William M. Bayless, who was a salesman in a clothing store kept by Browning, King & Co. in St. Louis, was admitted for the respondent over appellant's objection:

"William M. Bayless, being duly sworn on the part of plaintiff, testified as follows:

"I reside in St. Louis and am department manager of Browning, King & Company's clothing store. Have been selling clothing there for thirteen years. Know the plaintiff; remember his buying clothing for his boys a few years ago; can not remember the date. I did not know whether they were his sons or not.

"Bills of plaintiff at Browning, King & Company during first six months of 1896 shown to witness.

"Q. State whether or not in your opinion the purchases made by plaintiff for his boys were liberal or otherwise?

"Objected to as incompetent, no basis having been made for expert testimony and it was not a case for expert testimony; objection overruled, defendant duly excepting at the time.

"A. Yes, I thought they were very liberal. So much so that I thought he was their guardian, and I didn't know he was their father.

"On cross-examination witness said he could not recall the date or the amount of the purchases and only had a general impression on the subject."

The bills of merchandise shown to said witness had been previously put in evidence and were before the jury. The answer of the witness was received as to whether those bills showed liberal purchases by the respondent and was objected to as calling for his opinion instead of the jury's. This testimony was palpably incompetent as substituting the opinion of the witness in-

stead of the jury's on the very issue being tried: viz., whether respondent properly supplied his family with clothing. Lawson, Expert Test. (2 Ed.), rule 37. As the testimony on that issue was conflicting no one can tell what weight this strong declaration under oath of the opinion of a disinterested party concerning the merits of the case, may have had on the jury, and it forces a reversal of the judgment. Weil v. Posten, 77 Mo. 284; Lee v. Knapp, 155 Id. 610. The evidence was not admissible under the rule that a witness may state an opinion concerning a subject of inquiry with which he is familiar that is too general to be susceptible of direct proof. Proof was adduced of a multitude of facts which tended to show the character of the provision made by McCloskey for his family. The jury could appraise those facts as well as the witness and it was their exclusive office to do so. It was certainly improper to show the witness a list of the purchases the respondent made and ask whether they were liberal or not.

We have seriously pondered the argument that this evidence was harmless because it was conceded at the trial that respondent provided well for his older boys and, hence, the character of his provision for them was not in issue, but only the provision made for respondent's wife and the younger children. Bayless' testimony related to the clothing furnished the three older boys. The record does not bear out respondent's argument on this point. Direct and positive testimony was introduced to show the older children as well as the younger, were insufficiently supplied with clothing.

Part of the alleged libelous article whose truth was in issue was as follows:

" 'Why, that man,' she said, 'did not give me enough money to buy bread for my children. He is worth $100,000, and this very dress I've got on I bought last winter. I never tried to run any bills for clothes, that's the reason my children and I are ragged. What do you think of a man who treats his family like that?' "

There was no admission during the trial that the older children were provided with sufficient clothing by respondent and the following testimony of one of those children shows there was evidence directly to the contrary:

"Q. You had plenty of clothes yourself, hadn't you? A. No, sir.

"Q. Well did you ever apply for clothes and not get them? A. Yes, sir, frequently.

"Q. In that time weren't you one of the boys that got a pretty good supply at Browning, King & Co. in the month of May? A. I believe I was; that was a little before the trial came up for alimony; we were forced to leave the breakfast table to go and get that clothing.

"Q. You say that was a little before the trial came up? A. I think it was.

"Q. Don't you know that it was exactly a year before the trial came up? A. No, sir; I do not; I think it was right before one trial, I don't know which trial it was. I knew he was very urgent in the matter."

John McCloskey, another son, swore the underwear of the older children was as bad as that of the younger ones.

In view of the showing of the record, we can not pronounce the erroneously admitted evidence harmless, as bearing on an immaterial phase of the case.

The judgment is reversed and the cause remanded. *Bland, P. J.,* and *Reyburn, J.,* concur.